UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ODRAY KEVIN THOMPSON, | |
| Plaintiff, | |
| -against- | 23-CV-2025 (LTS) |
| DONALD J. TRUMP, INC., USA; PRINCE ANDREW; PRINCESS KATE MIDDLETON MEGAN MARKLE; L. WARD; ALVIN BRAGG; BENNY BOSCIO, JR.; WARDEN CORT, | ORDER OF DISMISSAL |
| Defendants. | |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff was detained at the George R. Vierno Center on Rikers Island when he filed this action *pro se*. By order dated March 10, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* (IFP), that is, without prepayment of fees.[1] Thereafter, Plaintiff was transferred to Mid-Hudson Forensic Psychiatric Center.

Plaintiff brings this action against members of the British royal family ("Prince Andrew," Kate Middleton, and Meghan Markle); "Donald J. Trump, Inc. (USA)"; New York Supreme Court Justice Laura Ward; Anna M. Kross Center Warden Cort; New York County District Attorney Alvin Bragg; and New York City Correction Officers Benevolent Association (COBA) President Benny Boscio, Jr. The Court dismisses the complaint for the reasons set forth below and allows Plaintiff, within 60 days, to amend his complaint to replead certain claims.

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

**STANDARD OF REVIEW**

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915I(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). "[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . ; or (2) the claim is based on an indisputably meritless legal theory.") *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks and citation omitted). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must

accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

(2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of

action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating

legal conclusions from well-pleaded factual allegations, the Court must determine whether those

facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff alleges the following:[2]

> I did the applecaion with Noble Pearson Bay. I hav a docket number, my S.S.
> number is still active here in New York City and this is the 3rd times I have been
> kidnaped by that NYPD Police Gang and the Supreem Court of New York and
> this slave complex Rickers Island. I am a Mooris American of MST of A. The trib
> am from the Maroons/Isrillight Moor/Moslem. What I stand for is love truth
> peace justice unity [illegible] power. I need my brith right and right natinolty. Am
> sueing because my name is in capital letter of the strawman.

(ECF 2 at 6.)

Plaintiff further seeks to "come for[war]d to the Kings and Queens of England, [and]

even the prince and princess." (*Id.* at 5.)  He notes that Jamaica has demanded "billions in

slavery reparations from UK." (*Id.*)

In response to a question on the form complaint about his injuries, Plaintiff writes:

> Kidnapping by NYPD Department of Police. Druge wrongfuly by the court of
> Supreme Brooklyn, Manhattan, Queens Bronx. Traumatized, eye raping
> handcuffed bind back beating in jeail working as a slave for 5 five cents a day.

(*Id.* at 6.)

Plaintiff seeks "freedom out of jail, reparations for slavery of Africa," and recognition

that he is a creditor landlord with land, money, and gold worth more than $70 billion.

---

[2] All spelling and punctuation in quoted material is from the original.

**DISCUSSION**

**A.    "Redemptionist" and Sovereign Citizen Theories**

Plaintiff's assertions appear to be based, at least in part, on the "redemptionist" or "sovereign citizen" theory. Courts have explained the idea behind these false and misguided ideas:

> "Redemptionist" theory . . . propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 19[3]3, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody. If government officials refuse, inmates are encouraged to file liens against correctional officers and other prison officials in order to extort their release from prison. Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers.

*Monroe v. Beard*, 536 F.3d 198, 203 n. 4 (3d Cir. 2008) (citation omitted); *United States v. Cook*, No. 3:18-CR-00019, 2019 WL 2721305, at *2 (E.D. Tenn. June 28, 2019) ("[S]overeigns believe they can use the court systems to access funds tied to their birth certificate and Social Security numbers, through a tactic known as 'redemption.'").

These pseudo-legal theories have been consistently rejected by federal courts as frivolous. *See Muhammad v. Smith*, No. 3:13-CV-760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) ("Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources."). Even when read with the "special solicitude" due *pro se* pleadings, *Triestman*, 470 F.3d at 475, there is no viable legal theory on which Plaintiff can rely, *see Denton*, 504 U.S. at 33; *Livingston*, 141 F.3d at 437. The Court therefore dismisses these claims under 28 U.S.C. § 1915(e)(2)(b)(i),

and does not grant Plaintiff leave to replead any claims based on redemptionist or sovereign citizen theories in his amended complaint, if he chooses to file one.

**B.**     **Excessive Force**

Plaintiff alleges, without more, that he suffered "j[ai]l beatings." (ECF 1 at 6.) The Due Process Clause of the Fourteenth Amendment protects the right of pretrial detainees to be free from excessive force amounting to punishment. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). To state an excessive force claim, a pretrial detainee must show that the force purposely or knowingly used against him was objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).

Here, Plaintiff fails to plead any facts about what occurred. He does not state who was involved, what happened, where the use of excessive force occurred, or when. Plaintiff's allegations thus do not comply with Rule 8 because the facts alleged are insufficient to put defendants on notice of the claim against them. Moreover, Plaintiff does not appear to have named any individual who was personally involved in violating his rights as a defendant. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). Plaintiff's allegation of excessive force is therefore dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Because Plaintiff may be able to plead facts sufficient to make out of a claim for excessive force under these standards, the Court grants Plaintiff leave to replead this claim in an amended complaint.

C.      **Forced Labor Claim**

1.      **Thirteenth Amendment Claim**

The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude,

except as a punishment for crime whereof the party shall have been duly convicted, shall exist

within the United States . . . ." U.S. Const. amend. XIII, § 1. The Amendment was intended to

prohibit all forms of involuntary labor, not solely to abolish chattel slavery. *See Slaughter–House

Cases*, 83 U.S. 36, 69 (1872). The Supreme Court has defined involuntary servitude as "a

condition of servitude in which the victim is forced to work for the defendant by the use or threat

of physical restraint or physical injury, or by the use or threat of coercion through law or the

legal process." *United States v. Kozminski*, 487 U.S. 931, 952 (1988). The prohibition on

involuntary servitude does not "bar labor that an individual may, at least in some sense, choose

not to perform." *Immediate v. Rye Neck Sch. Dist.*, 73 F.3d 454, 459-61 (2d Cir. 1996)

(concluding that school's mandatory community service requirement did not constitute

impermissible involuntary servitude).

"Pretrial detainees are not outside the ambit of the Thirteenth Amendment's involuntary

servitude provision." *McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012) (noting that it "would

be grotesque to read 'involuntary servitude' as not covering a situation where an employee was

physically restrained by guards," or where servitude was created "by a credible threat of

imprisonment").[3] In *McGarry*, a pretrial detainee adequately pleaded that he was subjected to

involuntary servitude where he asserted that his "work in the prison laundry was compelled and

maintained by the use and threatened use of physical and legal coercion," which he supported

---

[3] *Cf Toliver v. New York*, No. 20-CV-607, 2020 WL 6748847, at *6 (W.D.N.Y. Nov. 17, 2020) ("As a sentenced prisoner, the requirement that Plaintiff work does not run afoul of the provisions of the Thirteenth Amendment."), *aff'd*, 2022 WL 351057 (2d Cir. Feb. 7, 2022).

with allegations that "defendants threatened to send him to 'the hole' if he refused to work and that he would thereby be subjected to 23 hour-per-day administrative confinement and shackles," and they threatened him with disciplinary reports that could affect the length of his confinement,. *Id.* at 511-12.

Here, Plaintiff states that, while he was a pretrial detainee at Rikers Island, he was "working as a slave for 5 five cents a day." (ECF 2 at 6.) Although Plaintiff alleges generally that he was "working as a slave," he does not include any allegations that he was required – explicitly or through threats or coercion – to work while he was a pretrial detainee. These allegations therefore do not state a claim for a violation of Plaintiff's rights under the Thirteenth Amendment.

### 2.    Failure to Pay Minimum Wages

An individual who qualifies as an employee under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, can sue for unpaid minimum wages. *Danneskjold v. Hausrath*, 82 F.3d 37, 39 (2d Cir. 1996). Where a prisoner is providing labor services to a prison, however, the FLSA generally does not apply because "[t]he relationship is not one of employment; prisoners are taken out of the national economy; prison work is often designed to train and rehabilitate; prisoners' living standards are determined by what the prison provides; and most such labor does not compete with private employers." *Id.* at 42 (noting "a congressional assumption that prison labor will not be paid at FLSA minimum wage level"); *Wingate v. New York City*, 2014 WL 3747641, at *2 (E.D.N.Y. July 25, 2014) (rejecting FLSA claim based on allegations that plaintiff was paid less than the minimum wage for work he performed while confined at Rikers Island as a pretrial detainee).

Plaintiff does not suggest that, as a pretrial detainee, he was working in a capacity other than providing services to the prison. Nor does he plead any other facts that could give rise to an

inference that he was an employee within the meaning of the FLSA while he was doing unspecified work at Rikers Island. Plaintiff's allegation that he was paid wages substantially below the federal minimum wage for his work as a pretrial detainee, without more, thus does not state a claim upon which relief may be granted under federal law. *See Danneskjold*, 82 F.3d at 42.

Although the complaint gives no indication that Plaintiff can plead additional facts that would suggest that, as a pretrial detainee, he was subjected to involuntary servitude or performing work governed by the FLSA, the Court grants Plaintiff leave to replead such claims if he is able to do so.[4]

## D.    Leave to Amend

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

---

[4] Insofar as Plaintiff states that he has been kidnapped and seeks "freedom out of jail," the Court notes that a petition for a writ of *habeas corpus* is the sole remedy for prisoner seeking to challenge the fact or duration of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973). A *habeas* petitioner must raise his federal grounds for relief through one complete round of the state's established review process before bringing a petition for a writ of *habeas corpus*. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). Plaintiff has not identified any ground for relief, and thus there does not appear to be any basis for recharacterizing this action – which otherwise seeks only money damages – as a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241.

Plaintiff's claims based on the redemptionist theory should not be repleaded. Because Plaintiff may be able to allege additional facts to state a valid claim for excessive force, or some claim arising from his labor while a pretrial detainee at Rikers Island, the Court grants Plaintiff 60 days' leave to amend his complaint to detail the excessive force and labor-related claims.

If Plaintiff chooses to file an amended complaint, he must name as the defendants (in the caption and in the statement of claim) those individuals who were allegedly involved in the deprivation of his federal rights. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[5] The naming of Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "Doe" defendants and amending his complaint to include the identity of any "Doe" defendants before the statute of limitations period expires.[6]

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

    a)   the names and titles of all relevant people;

---

[5] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty August 31, 2022, at Sullivan Correctional Facility, during the 7-3 p.m. shift."

[6] Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief. The Court has granted Plaintiff leave to replead solely with respect to his claims that he suffered "jail beatings" and was required, as a pretrial detainee, to work.

**E.     Referral to NYLAG Pro Se Clinic**

Plaintiff may consult the legal clinic in this District that assists people who are parties in civil cases and do not have lawyers. The Clinic is run by a private organization called the New York Legal Assistance Group ("NYLAG"); it is not part of, or run by, the court (and, among other things, therefore cannot accept filings on behalf of the court, which must still be made by any *pro se* party through the Pro Se Intake Unit).

To request limited-scope assistance from the Clinic, Plaintiff may mail a signed retainer and intake form to the NYLAG Pro Se Clinic at 40 Foley Square, LL22, NY, NY 10007. Once the paperwork is received, the Clinic will coordinate contact with the litigant. Once the paperwork is received, it may take up to two weeks for the Clinic to contact the litigant. Copies of the Clinic's flyer, retainer, and intake form are attached to this order.

**CONCLUSION**

Plaintiff's complaint is dismissed under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). The Court is directed not to enter judgment and to hold this matter open on the docket to allow Plaintiff to

file an amended complaint to replead his claims that he was subjected to excessive force and involuntary labor as a pretrial detainee at Rikers Island.

If Plaintiff chooses to submit an amended complaint, it must be submitted to this Court's Pro Se Intake Unit within 60 days of the date of this order, captioned as an "Amended Complaint," and labeled with docket number 23-CV-2025 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, or seek an extension of time if he intends to file an amended complaint, the Court will enter judgment dismissing the complaint.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   June 12, 2023
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____

(Include case number if one has been
assigned)

**AMENDED
COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.      LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.     PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                    Middle Initial              Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                              State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

## V.      STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

# NYLAG
### New York Legal Assistance Group

## LEGAL CLINIC FOR PRO SE LITIGANTS IN THE SOUTHERN DISTRICT OF NEW YORK

<u>LIMITED SCOPE LEGAL ASSISTANCE RETAINER AGREEMENT</u>

You retain the New York Legal Assistance Group (NYLAG) to provide you with limited scope legal assistance through its Legal Clinic for Pro Se Litigants in the Southern District of New York (Clinic) under the terms set forth below.

### I.   LIMITS OF ASSISTANCE

The Clinic agrees to provide only limited scope legal assistance in connection with your matter.

This means that:

- You remain a self-represented (pro se) litigant and are responsible for all aspects of your case. NYLAG is not your attorney of record in this matter. In the event that you are or become a party to a case in the Southern District of New York or any other forum, NYLAG will not enter an appearance or otherwise act on your behalf without expressly agreeing to do so and entering into a separate signed agreement with you. NYLAG has no obligation to enter into any such agreement.

- NYLAG has sole discretion to determine the specific type of services provided. These services may include providing advice and counsel about your case, explaining court orders and procedures, reviewing and commenting on your drafts, assisting with drafting, and discussing strategy.

- This retainer covers an initial consultation only. NYLAG can stop assisting you with this matter at any time for any reason consistent with the New York Rules of Professional Conduct.

- NYLAG has not agreed to represent or assist you on any other matter in the future.  If NYLAG does agree to any representation on another matter, then a separate signed retainer agreement will be necessary.

- You may request but are not guaranteed subsequent appointments. NYLAG will only provide assistance on subsequent appointments if it provides you with confirmation to you of such assistance, via email or otherwise, with such additional assistance governed by the terms of this agreement, including that the assistance is for that consultation only and that NYLAG has sole discretion to decide whether it will provide any additional future consultations. You are responsible for and must meet all deadlines in your case, regardless of whether you are able to have an appointment with the Clinic.

### II.  FREE ASSISTANCE, NON-ATTORNEY PROVIDERS, AND COMPETENCY

NYLAG does not charge for this assistance.  You may be assisted by law students and/or paralegals under the supervision of an attorney consistent with the Rules of Professional Responsibility.  NYLAG's assistance does not guarantee success or any particular outcome but that NYLAG will provide competent assistance.

**III. TERMINATION OF ASSISTANCE**

Your participation is entirely voluntary, and you are free to stop receiving NYLAG's limited scope assistance at any time. NYLAG may stop providing limited assistance at its sole discretion consistent with the New York Rules of Professional Conduct. If NYLAG chooses to stop providing limited assistance, it will provide notice by email, mail, or phone.

**IV. CONFIDENTIALITY**

NYLAG will take all reasonable steps to maintain any information you provide as confidential.

**V.  REVIEW AND CONSENT**

By signing and writing today's date below, you indicate that you: have read and understand this agreement; consent to the terms of this agreement; and understand the possible risks and benefits of proceeding with limited scope assistance.

If you have questions or concerns, please indicate on this form and someone will arrange to speak with you.

_____                    _____
Signature                                                                      Date

**Once you have completed this form, please mail it and the completed demographic form to the New York Legal Assistance Group, Pro Se Clinic, 40 Foley Square, LL22, New York, NY 10007.**

# NYLAG
**New York** ▬ **Legal Assistance Group**

Revised 10/30/22

**Name** _____  **Date of Birth** _____

**Facility** _____

**Identification #** _____  **Email (if available)**_____

---

**How did you hear about our clinic? (Circle One)**

Pro Se Intake Office               Order/Letter from the Judge               Conference/Hearing with the Judge

Pro Se Information Package         Website                                    Friend/Family

Other _____

---

**Ethnicity (Circle One)**

Asian/Pacific Islander             Hispanic               Caucasian

African American                   Middle Eastern         Decline to Answer

African                            Caribbean

Native American                    South Asian

---

**Education Level (Circle One)**

8th Grade or Less                  GED                    2-4 years of College/Vocational School

Some high school                   College graduate       Decline to Answer

High school graduate               Graduate degree

---

**Gender:** _____

---

**SDNY Case Number:** _____

**Once you have completed this form, please mail it and the completed retainer to the New York Legal Assistance Group, Pro Se Clinic, 40 Foley Square, LL22, New York, NY 10007.**



Since 1990, NYLAG has provided free civil legal services to New Yorkers who cannot afford private attorneys.

# Free Legal Assistance for Self-Represented Incarcerated Civil Litigants in Federal District Court

The NYLAG Legal Clinic for Pro Se Litigants in the Southern District of New York is a free legal clinic staffed by attorneys, law students, and paralegals to assist those who are representing themselves or planning to represent themselves, including incarcerated litigants, in civil lawsuits in the Southern District of New York federal court, excluding habeas cases. The clinic is not part of or run by the court.

Even if a litigant has consulted with Clinic staff, unless they retain other counsel and that counsel enters a notice of appearance, they remain unrepresented; are responsible for doing whatever is necessary in connection with the case; and must still submit all court papers to the Pro Se Intake Unit, located in Room 105 of the Daniel Patrick Moynihan Courthouse, 40 Foley Square, New York, New York, or by following the court's instructions for filing via email as a pro se litigant.

## The Clinic Can:

- Assist with amending complaints and responding to motions to dismiss;
- Represent litigants for settlement purposes and, in limited circumstances, for depositions;
- Assist with written discovery;
- Recruit pro bono counsel for depositions and trial; and
- Assist with oppositions to summary judgment.

***Clinic staff cannot assist with habeas cases or criminal matters.***

NYLAG may also be unable to assist if it determines, in its professional legal judgement, that (i) you have refused to cooperate with the Clinic's counsel or follow the Clinic's advice; (ii) any assistance would be unreasonably difficult for NYLAG to carry out; or (iii) your case is or will become frivolous, unreasonable, groundless, or without merit.

## Contacting the Clinic:

To contact the clinic and request a copy of our retainer, please call (212) 659-6190 and leave a message or write to us at the following address:

> NYLAG Legal Clinic for Pro Se Litigants
> Thurgood Marshall Federal Courthouse
> Room LL22
> 40 Foley Square
> New York, NY 10007

Please mail a signed retainer back to the clinic at the above address. Once the paperwork is received, clinic staff will contact you. It may take up to two weeks.

Disclaimer: The information contained herein is for informational purposes only and is not legal advice or a substitute for legal counsel, nor does it constitute advertising or a solicitation.

